Donald L. Morrell, Intervener, v. Colonial Security Company
AL.

No. 1784. Decided January 29, 1908.

**Bond Investment Company—Deposit with State Treasurer—Domestic and Foreign Creditors.**

A bond investment company having deposited cash or securities with the State Treasurer as required by the Act of April 13, 1897 (Laws, 25th Leg. p.

118), its property was thereafter placed in the hands of a receiver for the purpose of winding up its affairs. Held that such Act did not make the deposit subject to Texas creditors alone; and that intervener, a creditor resident in another State and who had established his claim before the Master in Chancery, was entitled to share with domestic creditors in the distribution of such deposit. (Pp. 312, 313.)

Error to the Court of Civil Appeals in an appeal from Travis County.

Morrill, who had intervened in the receivership proceedings, appealed from a judgment of the District Court denying him a right to participate in the distribution by the receiver of the deposit with the State treasurer; and on affirmance obtained writ of error.

*Gregory & Batts* and *G. S. Wright,* for plaintiff in error.—A resident or citizen of Illinois is entitled to the same privileges and immunities as the citizens or residents of Texas, and any action on the part of a Texas court or its Legislature which attempts to deprive him of such privileges or immunities because of his residence or citizenship is in violation of article 4, section 2, of the Constitution of the United States. Sayles' Rev. Stats., arts. 749f, 749i; General Laws 27th Leg., 1901, ch. 116, p. 282; art. 4, sec. 2, Constitution of the United States; 9 Federal Statutes (Annotated), p. 178; People v. Granite State Provident Association, 161 N. Y., 496; Blake v. McClung, 172 U. S., 247; 176 U. S., 59; Maynard v. Granite State Provident Association, 92 Fed. Rep., 437; Lewis v. American Savings & Loan Co., 73 N. W. Rep., 793.

*Lackey & Lewright, Allen & Hart,* and *James H. Hart,* for defendants in error.—The funds in the hands of the State Treasurer deposited with him by the insolvent corporations in compliance with Act of the Twenty-fifth Legislature, Chapter 94, page 118, and Act of the Twenty-seventh Legislature; Chapter 116, page 282, were trust funds in his hand to secure any indebtedness of the corporations to Texas creditors, and as such trust funds are to be used in the payment of Texas creditors exclusively, until such creditors shall have been paid in full. Acts 25th Leg., Chap. 94, p. 118; Acts 27th Leg., Chap. 116, p. 282; Blake v. McClung, 172 U. S., 257, 258.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This controversy grows out of an intervention in a receivership case. J. F. Salisbury instituted suit against The Colonial Security Company, the American Bond Reserve Company and J. W. Robbins, as State Treasurer, the latter for the purpose of reaching a fund which had been deposited in the treasury of the State under the statute passed April 13, 1897. Under allegations of insolvency, fraud, etc., a receiver was appointed for the property of the companies; and a master in chancery having been appointed, the creditors were required to establish their claims before him. The plaintiff in error, Morrill, intervened, claiming an alleged indebtedness of $2,418—which was by the master allowed, but he was denied the right to participate in the fund which had

been deposited in the State Treasury under the statute, upon the ground that he was a non-resident creditor. The master's report was in this respect approved and made the judgment of the District Court. From this judgment plaintiff in error appealed to the Court of Civil Appeals, and the judgment was by that court affirmed. To that judgment the plaintiff in error has sued out a writ of error, which has been granted by this court.

We here set out the Act of the 13th of April, 1897, under which the deposit in question was made:

"Section 1. Be it enacted by the Legislature of the State of Texas: That every corporation, company, or individual, doing business in this State as a bond investment company, or company to place or sell bonds, certificates or debentures on the partial payment or installment plan, shall, and the same is hereby required to deposit with the State Treasurer, in cash or securities approved by the State Treasurer, the sum of five thousand dollars, and in addition thereto they shall be required to deposit semi-annually with the State Treasurer in cash or securities to be approved by said officer, ten per cent of all the net premiums received, until the sum deposited shall amount to the sum of ($100,000) one hundred thousand dollars.

"Section 2. If any such company, being a domestic corporation, shall fail, for sixty days after the passage of this act, or for sixty days after the organization of such company, to make with the State Treasurer the deposit required by this act, it shall be considered to have forfeited its charter, and the attorney-general shall, immediately upon receiving information thereof, bring suit in the name of the State, in the District Court of Travis County, to have such charter or certificate of incorporation declared forfeited and of no effect, and said court shall declare such charter forfeited, and appoint a receiver for such company, whose duty it shall be, under the order of the court, to distribute to the shareholders the assets of the company. The court shall, out of the assets of the company, make such allowance for compensation for the receiver as shall be equitable and just.

"Sec. 3. If any officer, agent, or representative of any such company or companies, whether they be foreign or domestic corporations, shall attempt to place or sell shares, or to transact any business whatsoever in the name or on behalf of such company or companies while they fail or refuse to comply with the provisions of this act, said officer, agent, or representative shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars for each offense, or be imprisoned in the county jail for not less than thirty days nor more than six months, or by both such fine and imprisonment. Provided, that such company or companies that have sold bonds, certificates, or debentures prior to the taking effect of this act may and can carry out their contracts in force at said date without complying with the provisions of this act.

"Sec. 4. In case of the failure of any company covered by this

Act, the District Court of the county or city in which the principal office is located, upon the application of one or more shareholders, shall appoint a receiver for such company, whose duty it shall be to wind up its affairs, liquidate its debts and distribute its assets, using therefor, upon the order of the court, the deposit previously made, to secure the shareholders, with the State Treasurer; and the State Treasurer is hereby authorized to pay out such deposit in accordance with requisitions made upon the State Comptroller by said receiver, and approved by the court, upon the warrant of the State Comptroller."

It is to be observed, that nowhere in the act is there any expression which limits the benefit of the deposit to shareholders and creditors who are residents of the State. On the contrary, in section 2 it is provided that in case of a forfeiture for a failure to comply with the act, the court shall appoint a receiver whose duty it shall be to distribute the assets of the company among the shareholders thereof—evidently meaning foreign as well as domestic shareholders. But since under the contingency contemplated in that section, there would be no deposit, this is entitled to but little weight. But section 4 provides that in case of a failure of any corporation subject to the provisions of the act, the court shall appoint a receiver whose duty it shall be "to wind up its affairs, liquidate its debts and distribute its assets, using therefor, upon the order of the court, the deposit previously made, to secure the shareholders, with the State Treasurer," etc. This means that in liquidating its debts the deposit may be used; which in view of the fact, that the shareholders are entitled to nothing until the debts are paid, seems eminently just. If the fund is to be used to liquidate debts, it means, all debts whether the creditors be foreign or domestic—as shareholders means all shareholders without distinction or discrimination as to their residence. How we are to place a limitation upon terms so general in the absence of an express limitation or of some words from which a limitation could be implied we can not see. If it be urged, that, but for the fact that the companies would have shareholders or creditors in this State, the Legislature would have no object in requiring the deposit, the answer is that it does not follow that they intended a discrimination in favor of the residents of the State, when they probably thought that the provision was ample to protect all without discrimination. That there was no fixed policy of that character in our Legislature is shown by a similar provision in our insurance laws, which declares that the deposit of $100,000 shall be for the benefit of the policy holders who are "citizens or residents of the United States." (2 Sayles' Stat., art. 3067.)

Nor do we think that the provisions contained in section 6 of the Act approved April 18, 1901, help the matter. That section merely provides, that, in case any one of these companies cease to do business in this State, it may withdraw its deposit upon satisfying the Comptroller and attorney-general that it has no liabilities in this State. This is not inconsistent with the idea that

the Legislature intended the deposit for the benefit of non-residents as well as resident creditors as long as the company was doing business in the State and availing itself of the protection of the laws of the State; and that they also deemed it best, when it ceased to do business in the State to allow it to withdraw its deposit, provided it had no liabilities in the State. Having ceased to act in the State the State was no longer morally responsible for its solvency. It was therefore permitted to withdraw and to take with it its assets.

We therefore think the judgment should be reversed and here rendered in favor of plaintiff in error and it is accordingly so ordered.

*Reversed and rendered.*